**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 13-61747-CV-ROSENBAUM**

KURT S. SOTO, an individual, on behalf of
himself and all others similarly situated,

                Plaintiff,

    vs.

THE GALLUP ORGANIZATION, INC., a
Delaware corporation,

                Defendant.      /
LAURIE C. MARR, on behalf of herself and all
others similarly situated,

                Plaintiff,

    vs.

GALLUP, INC., a Delaware corporation,

                Defendant.

                     /
ANN FOX, individually and on behalf of all
others similarly situated,

                Plaintiff,

    vs.

GALLUP, INC., a Delaware corporation,

                Defendant.

                     /

**CLASS ACTION**

**DEFENDANT GALLUP, INC.'S MOTION
TO STAY THE LITIGATION PURSUANT
TO THE PRIMARY JURISDICTION
DOCTRINE; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
THEREOF**

Honorable Robin S. Rosenbaum

**GALLUP INC.'S MOTION TO STAY THE LITIGATION
PURSUANT TO THE PRIMARY JURISDICTION DOCTRINE;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................1

II.    FACTUAL BACKGROUND ...............................................................................2

III.   THE PENDING PETITIONS FOR DECLARATORY RULING .......................3

    *A.*     *In re Communication Innovators* ...........................................................4

    *B.*     *In re YouMail* .........................................................................................5

    *C.*     *In re Pace* ..............................................................................................6

IV.    LEGAL STANDARD...........................................................................................6

V.     ARGUMENT ........................................................................................................8

    A.     The FCC Has the Power to Implement the TCPA and to Interpret the
        Statute. ....................................................................................................8

    B.     A Stay Is Warranted While The FCC Addresses Questions Regarding
        What Constitutes An ATDS.....................................................................9

        1.     The FCC Is Best Positioned to Determine the Scope of the
            Undefined Term "Capacity," a Question that is Pertinent to the
            Resolution of this Lawsuit. ..........................................................9

        2.     The FCC Is Best Positioned To Determine Whether Calls Made By
            An ATDS Includes Those Calls In Which Some Level Of Human
            Intervention Is Involved...............................................................11

        3.     The Need For A Uniform Interpretation Of The Definition Of An
            Automatic Telephone Dialing System Warrants The Imposition Of
            A Stay...........................................................................................11

VI.    CONCLUSION....................................................................................................15

US_ACTIVE-115141144

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alea London Ltd. v. American Home Services, Inc.*,
   638 F.3d 768 (11th Cir. 2011) ................................................................ 12

*Auer v. Robbins*,
   519 U.S. 452 (1997)................................................................................... 9

*Boyes v. Shell Oil Prods. Co.*,
   199 F.3d 1260 (11th Cir. 2000) ..................................................... 7, 8, 12

*Charvat v. EchoStar Satellite, LLC*,
   630 F.3d 459 (6th Cir. 2010) ....................................................... 9, 10, 12

*Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837 (1984)................................................................................... 9

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008) ................................................................. 7

*Frontier Tel. of Rochester, Inc. v. USA Datanet Corp.*,
   386 F. Supp. 2d 144 (W.D.N.Y. 2005) ................................................... 14

*Gamble v. PinnOak Res., LLC*,
   511 F. Supp. 2d 1111 (N.D. Ala. 2007)................................................... 7

*Glauser v. Twilio, Inc.*,
   2012 WL 259426 (N.D. Cal. Jan. 27, 2012)........................................... 14

*Hunt v. 21st Mortg. Corp.*,
   2013 WL 5230061 (N.D. Ala. Sept. 17, 2013) ...................................... 10

*Hurrle v. Real Time Resolutions, Inc.*,
   Case No. C13-5765, 2014 WL 670639 (W.D. Wash., February 20, 2014)............................. 13

*Mendoza v. United Health Group, Inc. et al.*,
   Case No. 4:13-CV-01553-PJH, 2014 WL 722031 (N.D. CA, January 6, 2014)...................... 13

*Nelson v. Santander Consumer USA, Inc.*,
   931 F.Supp.2d 919 (W.D. Wis. 2013) .................................................... 11

*Self v. BellSouth Mobility, Inc.*,
   111 F. Supp. 2d 1169 (N.D. Ala. 2000).................................................. 7, 12, 13

*Smith v. GTE Corp.*,
   236 F.3d 1292 (11th Cir. 2001) ............................................................. 6, 7

*Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision)*,
   618 F. Supp. 2d 256 (E.D.N.Y. 2009) .................................................... 12

*U.S. v. Philadelphia Nat'l Bank*,
   374 U.S. 321 (1963)................................................................................. 12

*United States v. Western Pac. R.R. Co.*,
   352 U.S. 59 (1956)............................................................................... 7, 13

**Statutes**

47 U.S.C. § 227(a)(1)(A) ................................................................................. 3

47 U.S.C. § 227(a)(1)(B) ................................................................................. 3

47 U.S.C. § 227(b)(1)(A)(iii) ........................................................................... 3

47 U.S.C. § 227(b)(2) ..................................................................................... 8

47 U.S.C. § 227(b)(2)(B) ................................................................................. 8

47 U.S.C. § 227(b)(2)(C) ................................................................................. 8

47 U.S.C. § 227(c)(1) ..................................................................................... 8

47 U.S.C. § 227(c)(2) ..................................................................................... 8

47 U.S.C. § 227(f)(3) ..................................................................................... 8

**Other Authorities**

Telephone Consumer Protection Act of 1991, Pub. Law 102–243, §§ 2(4), (5),
    December 20, 1991, 105 Stat. 2394 (Congressional Statement of Findings) ............................. 9

US_ACTIVE-115141144

Defendant Gallup, Inc. ("Gallup") requests that the Court stay these consolidated cases pursuant to the doctrine of primary jurisdiction in order to give the Federal Communications Commission ("FCC") the opportunity to issue a decision on three Petitions for Declaratory Ruling that the FCC currently has under consideration.[1]  In support thereof, Gallup submits the following Memorandum of Law:

I.      **INTRODUCTION**

The three Petitions all request clarification from the FCC regarding the scope of the term "automated telephone dialing system" ("ATDS") under the Telephone Consumer Protection Act ("TCPA").  Specifically, the three Petitions ask the FCC to clarify whether the word "capacity" as used in the definition of an ATDS means the *theoretical* capacity or *present* capacity to store, produce, or dial random or sequential numbers.  Additionally, one of the three Petitions also seeks clarification from the FCC as to whether the definition of an ATDS excludes those systems in which some level of human interaction is required before a call can be placed.  In this case, Plaintiff alleges that Gallup violated the TCPA by placing telephone calls to his cellular phone using an ATDS without Plaintiff's prior express consent.  However, the dialing equipment used by Gallup does not have the present capacity to store, produce or dial random or sequential numbers.  Additionally, the dialing equipment used by Gallup requires human intervention before a call can be placed to a cellular telephone.  Therefore, a decision from the FCC as to the questions regarding capacity and human intervention in defining an ATDS will greatly aid the resolution of this case.  Further, a recent flurry of FCC activity indicates that an order regarding

---

[1] In addition to this case, there are two other TCPA matters pending before this Court:  *Laurie C. Marr v. Gallup, Inc.*, Case No. 1:14-20538-CIV-RSR (transferred from the Southern District of California) ("Marr") and *Ann Fox v. Gallup, Inc.*, Case No. 1:14-20538-CIV-RSR (transferred from the Central District of California) ("Fox").  On April 3, 2014, the Court issued an order consolidating all three cases and setting Soto as the lead case.  All plaintiffs are herein collectively referred to as "Plaintiff" or "Soto".

one of these Petitions might be imminent.  Thus, rather than expend judicial resources to determine an issue of national significance that will soon be resolved by the FCC, the administrative body with the power to interpret and construe the TCPA, the Court should instead stay the current lawsuit and await the FCC's determination of the pending Petitions.

## II.   <u>FACTUAL BACKGROUND</u>

Gallup is a consulting and polling company that gathers the opinions of individuals worldwide on a wide array of topics, including people's attitudes regarding current events and politics.  Declaration of Glen Kallhoff ("Kalhoff Decl.") ¶ 2.  The calls at issue in this case were made by Gallup for the purpose of conducting public opinion research.  *Id*.  The dialing system that Gallup used to place the calls at issue ("Gallup's Dialing System") did not store or produce telephone numbers to be called using a random or sequential number generator and the equipment did not dial random or sequential phone numbers.  *Id.* at ¶ 3.  Further, Gallup's Dialing System lacked the *current* capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.  *Id.*  Gallup's dialing system could only dial phone numbers that were specifically downloaded into the dialing technology.  *Id.* at ¶ 4.  Moreover, the dialing equipment that Gallup uses to place telephone calls to cellular telephones requires human intervention before a telephone call can be placed.  *Id.* at ¶ 5.

On August 12, 2013, Plaintiff Kurt Soto filed a putative class action complaint against Gallup, claiming that Gallup had violated the TCPA by using an ATDS to call him during the month of July 2013.  On August 16, 2013, Plaintiff filed a First Amended Complaint ("FAC"), making largely the same allegations.  FAC ¶ 13, 15. On October 9, 2013, Gallup filed an answer to Plaintiff's FAC.

III.     **THE PENDING PETITIONS FOR DECLARATORY RULING**

There are currently three petitions pending before the FCC that address a critical issue that lies at the heart of the present case—whether equipment that lacks the *current* capacity for random or sequential number generation should be considered an ATDS.  One of these petitions also requests that the FCC address a second important issue in this case--whether a system that requires human intervention in order to place a call constitutes an ATDS.  Both of these issues are directly relevant to the issues in this case, as the dialing equipment used by Gallup does not have the current capacity for random or sequential number generation, and because the equipment requires human intervention in order to place a call to a cellular telephone.  [*See* Kalhoff Decl. ¶¶ 4, 8, 9, 10].  In order to give the FCC the opportunity to issue a declaratory ruling addressing these precise issues , the Court should stay this suit.

The relevant provision of the TCPA regarding an ATDS is found at Section 227(a)(1). The statute defines an ATDS as

> equipment which has the capacity—
> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
> (B) to dial such numbers.

47 U.S.C. § 227(a)(1)(A),  (B).  In order to be liable under the provision of the TCPA at issue in this litigation, a defendant must have made a call "using an automatic telephone dialing system" to any telephone number assigned to a "cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).  Plaintiff's allegations focus on this provision of the TCPA.  FAC ¶¶ 32. Therefore, the scope of "capacity" and the question of whether calls made by an ATDS include those calls that require human intervention are of critical importance to the resolution of this lawsuit.

US_ACTIVE-115141144

A.      _In re Communication Innovators_

The first Petition for Declaratory Ruling is titled In the Matter of Communication Innovators' Petition for Declaratory Ruling, GC Docket No. 02-278 (June 7, 2012) ("CI Petition") (Declaration of Felicia Yu ("Yu Decl.") at Exhibit A).  The CI Petition specifically asks the FCC to clarify "that predictive dialers that…do not have the current ability to generate and dial random or sequential numbers, are not 'automatic telephone dialing systems' under the TCPA and the Commission's TCPA rules."  (Yu Decl. at Exh. A p. 1).

In requesting this ruling, the CI petition points out that the TCPA does not define "capacity," and urges the FCC to "clarify that the definition of an [ATDS] under the TCPA reflects equipment that has a _present_ capacity, such as having the current ability to generate and dial random or sequential numbers without additional modifications to the equipment."  _Id._ at 17. It argues that the FCC "should not interpret capacity as encompassing any conceivable hardware or software modification to a device that would permit it to generate, store, and dial numbers randomly or in sequence."  _Id._   As the CI Petition notes, interpreting "capacity" broadly to include "any conceivable hardware or software modification" would potentially bring "mobile phones, smart phones, tables, e-readers, and personal computers" within the TCPA's scope, as each can "theoretically be modified…to randomly or sequentially generate and dial telephone numbers."  _Id._

The CI Petition was filed on June 7, 2012.  About four months later, the FCC issued a public notice seeking comment on CI's petition and on six other petitions, most relating to the use of auto-dialing technologies, and all relating to the TCPA.  _See_ Federal Communications Commission, Consumer and Governmental Affairs Bureau Seeks Comment on Petition for Declaratory Ruling from Communication Innovators (October 16, 2012) (Yu Decl. at Exhibit B). The deadline for comments was November 15, 2012, and for reply comments, November 30,

2012, virtually one year ago.  *Id*.  At that time, numerous consumer and industry groups commented, most of whom generally supported CI's Petition.  *See* Reply Comments of Communication Innovators, In the Matter of Communication Innovators Petition for Declaratory Ruling, CG Docket No. 02-287 (November 30, 2012) (Yu Decl. at Exhibit C), which discusses various comments filed at pp. 2, 3, 7, 8, 10, 12, 13 and 15.  While the formal comment period has now passed, interested parties continue to submit letters to the Commission and regularly visit with Commission staff urging prompt action.

Recently, the FCC has indicated that a decision regarding the CI Petition is likely imminent.  In September 2013, the FCC released an exchange of correspondence between several Members of Congress and the then FCC Chair (and the Acting Chief of the Consumer and Governmental Affairs Bureau), in which the Commission stated that "[a] draft order to resolve the [CI] Petition is under consideration by the Commission, and Communication Innovators has met with the staff recently to discuss the matter."  (Yu Decl. at Exhibit D).  The letter from Congress (signed by three Members) to the then FCC Chair was dated June 19, 2013 and the FCC's response, though not released until September 28th, 2013 was dated September 10, 2013.  This recent flurry of activity regarding the CI Petition bolsters the likelihood that directly relevant guidance from the FCC will be issued in the near future.

### B.    *In re YouMail*

The second Petition that is currently pending before the FCC was filed by Youmail, Inc. ("YouMail"), and was submitted on April 19, 2013.  Like CI, Youmail specifically asks that "the Commission affirmatively state that only equipment that has a current capacity to store and produce telephone number to be called using a random or sequential number generator" should be considered an ATDS.  (Yu Decl, at Exhibit E).  On June 25, 2013, the FCC issued a public notice seeking comment on YouMail's petition.  *See* Federal Communications Commission,

Consumer and Governmental Affairs Bureau Seeks Comment on Petition for Declaratory Ruling from YouMail, Inc. (June 25, 2013) (Yu Decl. at Exhibit F).  The deadline for comments was July 25, 2013, and for reply comments, August 9, 2013.  YouMail's proposed interpretation of the term "capacity" as current capacity received "widespread support from the majority of commenters."  Reply Comments of YouMail, Inc., In the Matter of YouMail Inc.'s Petition for Expedited Declaratory Ruling, CG Docket No. 02-287 (August 9, 2013) (Yu Decl. at Exhibit G).

  **C.**  **_In re Pace_**

   The third Petition currently pending before the FCC was filed by the Professional Association for Customer Engagement ("PACE"), and was submitted on October 18, 2013.  Like the above petitioners, PACE specifically asks the FCC to clarify whether the term "capacity" is limited to a dialing system's capabilities at the time that a call is made as opposed to a theoretical capacity based on equipment design.  *See In re Professional Association for Customer Engagement's Petition for Expedited Declaratory Ruling*, CG Docket No. 02-278 (October 18, 2013) (the "PACE Petition") (Yu Decl. Exhibit H).  Pace also asks the FCC to interpret the definition of an ATDS to exclude dialing systems that require any level of human intervention before the call can be placed.  *See id.*  On November 19, 2013, the FCC issued a public notice seeking comment on the PACE Petition.  *See* Federal Communications Commission, Consumer and Governmental Affairs Bureau Seeks Comment on Petition for Declaratory Ruling from PACE (July 24, 2013) (Yu Decl. at Exhibit I).  The FCC's deadline for comments was December 19, 2013, and for reply comments, January 4, 2014.

**IV.** **LEGAL STANDARD**

   The primary jurisdiction doctrine permits a court to "stay an action pending resolution of some portion of the action[] by an administrative agency."  *Smith v. GTE Corp.*, 236 F.3d 1292, 1298 n.2 (11th Cir. 2001).  The primary jurisdiction doctrine "'comes into play whenever

enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.'" *Id.* (quoting *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)).  The two main justifications for granting a stay under the primary jurisdiction doctrine are the utilization of "the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation." *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000).

There is no "fixed formula" for a court to consider in deciding whether to grant a stay under the doctrine of primary jurisdiction. *Western Pac. R.R.*, 352 U.S. at 64.  Rather, the question a court must consider is "whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Gamble v. PinnOak Res., LLC*, 511 F. Supp. 2d 1111, 1126 (N.D. Ala. 2007).  Some factors that courts have considered include "the degree of the agency's discretion over the matter, the relative expertise of the agency and the courts in making the required determinations, the need for uniformity, the clarity of any pre-existing agency pronouncements, and the status of any proceedings on-going before the agency." *Self v. BellSouth Mobility, Inc.*, 111 F. Supp. 2d 1169, 1173 (N.D. Ala. 2000); *see also Gamble*, 511 F. Supp. 2d at 1126 (adopting these factors as a guide to the decision to grant a stay).  Essentially, the primary jurisdiction doctrine is "concerned with protecting the administrative process from judicial interference." *Boyes*, 199 F.3d at 1265.

The application of the doctrine of primary jurisdiction is particularly appropriate where a decision of the relevant administrative agency is currently pending and where the issue to be decided is on point with the issue before the court. *See Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008) (noting, in affirming the district court's exercise of the primary

jurisdiction doctrine, that a pending Notice of Proposed Rulemaking "demonstrates that the agency is actively considering" the question presented).

## V.     ARGUMENT

The Court should stay this action pending a ruling by the FCC on the three Petitions for Declaratory Ruling.  All three Petitions seek guidance from the FCC as to the meaning of "capacity" under the TCPA.  The PACE Petition further seeks guidance form the FCC as to whether calls placed by an ATDS include those calls in which some level of human intervention is involved.  Here, both of these issues are unresolved, and both of these issues are directly relevant to Plaintiff's claims against Gallup in this case.  The FCC has jurisdiction to determine these issues, and doing so requires a uniform decision made using the specific expertise of the FCC.  *Boyes*, 199 F.3d at 1265.  As such, the prerequisites for the granting of a stay under the doctrine of primary jurisdiction have been satisfied here.  Further, a decision on at least one of the Petitions is likely forthcoming quite soon.  Because the correct construction of the term "automatic telephone dialing system," including the scope of the term "capacity" and whether dialing systems that require some level of human intervention fall within the definition of an ATDS are of vital importance to this lawsuit, the Court should exercise its discretion under the doctrine of primary jurisdiction and stay this action pending a decision by the FCC.

### A.     The FCC Has the Power to Implement the TCPA and to Interpret the Statute.

Congress explicitly gave the FCC the power to implement and construe the FCC.  47 U.S.C. § 227(b)(2).  Specifically, the TCPA empowers the FCC to prescribe regulations under the Act (see 47 U.S.C. §§ 227(b)(2), 227(c)(1), 227(c)(2)), to exempt calls from the requirements of the Act (see id. §§ 227(b)(2)(B), 227(b)(2)(C)), to intervene in suits filed by state attorneys general (see id. § 227(f)(3), and to enforce the provisions of the Act and its accompanying

US_ACTIVE-115141144

regulations.  *See also Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466-67 (6th Cir. 2010) (outlining the FCC's role under the TCPA).  Further, and germane to this lawsuit, the FCC has interpretive authority over the provisions of the TCPA, (*see Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984)), over its accompanying regulations, (*see Auer v. Robbins*, 519 U.S. 452, 461 (1997)), and has the power to construe the TCPA.  *See Charvat*, 630 F.3d at 467.  In light of the specific role given the FCC under the TCPA, the FCC is best positioned to make a determination as to the construction of that statute, and specifically to define more precisely the term "capacity" as it is used therein and to clarify whether calls placed using an ATDS include those that are placed with a system requiring some level of human intervention.

**B.   A Stay Is Warranted While The FCC Addresses Questions Regarding What Constitutes An ATDS**

**1.   The FCC Is Best Positioned to Determine the Scope of the Undefined Term "Capacity," a Question that is Pertinent to the Resolution of this Lawsuit.**

The TCPA itself does not define "capacity" with regard to the definition of an ATDS and the word is not modified by any adjective, limiting or otherwise.  Nor has the FCC yet specifically addressed the question of what scope the word "capacity" should have under the statute.  Without FCC guidance, the word "capacity" is subject to a range of interpretations, with the broadest construction leading to the TCPA's application to consumer devices like the average smart phone, which has a theoretical capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to call such numbers.  However, such an outcome is illogical and at odds with the intent of Congress in passing the TCPA, a statute that was intended to regulate telemarketers.  Telephone Consumer Protection Act of 1991, Pub. Law

102–243, §§ 2(4), (5), December 20, 1991, 105 Stat. 2394 (Congressional Statement of Findings).

The illogic of giving "capacity" a broad scope is nicely captured in a recent opinion from a district court in the Northern District of Alabama, *Hunt v. 21st Mortg. Corp.*, 2013 WL 5230061, at *3-*4 (N.D. Ala. Sept. 17, 2013).  In that case, the court, considering an argument for a broad definition of "capacity", stated that "[t]he problem with this reasoning is that, in today's world, the possibilities of modification and alteration are virtually limitless," noting that it is "virtually certain that software could be written, without much trouble, that would allow iPhones" to fall under the auspices of the TCPA. *Id.* at *4.  A limitless definition of capacity, the court concluded, could mean that "roughly 20 million American iPhone users [would be] subject to the mandates of § 227(b)(1)(A)." *Id.*  As such, the court in *Hunt* concluded that "to meet the TCPA definition of an 'automatic telephone dialing system,' a system must have a present capacity, at the time the calls were being made, to store or produce and call numbers from a number generator." *Id.*

And yet this illogical outcome, if capacity is defined broadly, is just what may occur in the absence of any guidance from the FCC.  Nor is this a speculative risk: because of a recent flood of TCPA litigation, the courts have been—and will continue to be—compelled to attempt to define the term "capacity" without guidance from the FCC.  An ad-hoc approach to determining the proper scope of "capacity," however, "heightens the risk that individuals and companies will be subject to decisions pointing in opposite directions." *Charvat*, 630 F.3d at 466.

       **2.**     **The FCC Is Best Positioned To Determine Whether Calls Made By An ATDS Includes Those Calls In Which Some Level Of Human Intervention Is Involved**

The language of the TCPA also does not clarify whether the definition of an ATDS excludes those systems that require some level of human intervention in order to place a call.  In *Nelson v. Santander Consumer USA, Inc.*, 931 F.Supp.2d 919, 930 (W.D. Wis. 2013), the Western District of Wisconsin held that a dialer used to make calls in "preview mode," in which an employee rather than the system chooses which number to dial, constitutes an ATDS under the TCPA.  *Id.* Although the decision was ultimately vacated by a joint motion and stipulation by the parties, the case has generated enormous concern within the business community about whether "one-click" preview dialing could constitute a *per se* violation of the TCPA and has caused speculation about whether even manually dialed calls could eventually be deemed violation if made using a devise as simple as a cell phone.  *See Comments to FCC on PACE Petition for Expedited Declaratory Ruling re: TCPA* at p. 4 (attached as Exhibit J to Yu Decl.).

As is the case with the defining the scope of the term "capacity," the FCC's guidance in clarifying whether an ATDS excludes dialing systems that require human intervention will reduce the risk of individuals and companies having to be subject to inconsistent and conflicting decisions.

       **3.**     **The Need For A Uniform Interpretation Of The Definition Of An Automatic Telephone Dialing System Warrants The Imposition Of A Stay.**

As set forth above, the guidance of the FCC is required to limit the broad range of interpretations to which the definition of an ATDS may be subject.  Granting a stay will prevent further contribution to a confused field of TCPA jurisprudence.  It will also help to protect the special role of the FCC with regard to the TCPA and will allow the Commission to utilize its expertise in construing the term "capacity" under the TCPA and in determining whether an

ATDS includes those systems that require human intervention to place a call. *E.g., Boyes*, 199 F.3d at 1265. Permitting the FCC to utilize its expertise to resolve these issues is particularly important in this case where the dialing equipment used by Gallup does not have the current capacity to store and produce numbers to be called using a random or sequential number generator, and where human intervention is required before a call can be placed to a cellular telephone. Kalhoff Decl. ¶¶ 4-6. A stay will also protect "the integrity of [the] regulatory scheme" created by the TCPA as instituted by the FCC. *E.g., Self*, 111 F. Supp. 2d at 1172 (citing *U.S. v. Philadelphia Nat'l Bank*, 374 U.S. 321, 353 (1963)).

Finally, granting a stay will ensure that the FCC and the courts "do not work at cross-purposes." *Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision)*, 618 F. Supp. 2d 256, 268 (E.D.N.Y. 2009). The risk of inconsistent court decisions regarding the TCPA if a stay is not granted to permit the FCC to decide the issue is just too great. See *Charvat*, 630 F.3d at 466 (staying case under doctrine of primary jurisdiction and noting that the TCPA and its regulations control "services nationally, creating the possibility of conflicting decision in different state and federal jurisdictions"). The grant of a stay is even more important in light of the fact that the TCPA is a "strict liability" statute, subjecting defendants to possibly huge monetary damages that could be based on a faulty reading of the statute. See *Alea London Ltd. v. American Home Services, Inc.*, 638 F.3d 768, 776 (11th Cir. 2011). As has been noted above, the average consumer smart phone has the theoretical capacity to store or produce numbers using a random or sequential number generator and to call those numbers. A broad interpretation of an ATDS would therefore subject millions of users of smart phones to potential liability and a potential $1,500 penalty under the TCPA for merely calling an acquaintance. Permitting the FCC to speak first will avoid judicial findings of liability which may later turn out to be incorrect in light of

FCC guidance.  *See, e.g., Self*, 111 F. Supp. 2d at 1172 (noting that allowing an agency to decide the issue first ensures that "the limited functions of review by the judiciary are more rationally exercised") (citing *Western Pac. R.R. Co.*, 352 U.S. at 64).

Recently, two district courts have granted stays in putative TCPA class actions based on the pending Petitions before the FCC governing the scope of the definition of an ATDS.  In *Mendoza v. United Health Group, Inc. et al.,* Case No. 4:13-CV-01553-PJH, 2014 WL 722031 (N.D. CA, January 6, 2014), the Northern District of California stayed a putative class action alleging violations of the TCPA holding that the pending FCC Petitions regarding what constitutes an ATDS directly overlapped with the legal issues raised in the plaintiff's complaint. In that case, the plaintiff, Mendoza, alleged that the defendants violated the TCPA by initiating calls to the Mendoza's cellular telephone without Mendoza's prior express consent using an ATDS. *Id.* *1 (N.D. CA, January 6, 2014).  The court observed that the FCC Petitions requesting clarification on the definition of "capacity" and seeking clarification that a dialing system is not an ATDS unless it has the capacity to dial numbers without human intervention were directly relevant to the issues raised in Mendoza's complaint.  *Id.* at p. 3.  For this reason, the *Mendoza* court held that "allowing the FCC to resolve the foregoing issues prior to adjudicating the issue in the present action, in order to obtain the benefit of the FCC's guidance, is appropriate."  *Id.*

Similarly, in *Hurrle v. Real Time Resolutions, Inc.*, Case No. C13-5765, 2014 WL 670639, *1 (W.D. Wash., February 20, 2014), the Western District of Washington granted a stay of a putative TCPA class action based on the primary jurisdiction doctrine, holding that "guidance on the 'capacity' of autodialing systems would further clarify the law that [Plaintiff] seeks to enforce in this action."  *Id.*  Following the decisions of *Hurrle* and *Mendoza*, this Court should also stay this action pending the resolution of the FCC petitions seeking clarification

US_ACTIVE-115141144

regarding the definition of an ATDS, since such clarification is central to Plaintiff's claims against Gallup in this action.

Granting a stay here is particularly appropriate because the FCC has indicated that a draft order with respect to the CI Petition is already circulating at the Commission. (*See* Exhibit D to the Yu Decl.). Other courts, when faced with the likelihood of an imminent decision from an administrative agency, have granted stays. *See, e.g., Frontier Tel. of Rochester, Inc. v. USA Datanet Corp.*, 386 F. Supp. 2d 144, 151 (W.D.N.Y. 2005) (granting a stay where it appeared that an FCC decision "will be forthcoming in a matter of months"). Quite recently, a district court in the Northern District of California concluded that a stay was appropriate in litigation under the TCPA regarding text messages when there were several petitions for declaratory ruling pending before the FCC and when the FCC had issued a Notice of Proposed Rulemaking regardinsome of the issues. *See Glauser v. Twilio, Inc.*, 2012 WL 259426, at *2-*3 (N.D. Cal. Jan. 27, 2012). The *Glauser* court issued the stay after concluding "that the FCC is in the process of utilizing its recognized expertise to consider issues pending before the court" and that "allowing the FCC to resolve the foregoing issues prior to adjudicating the issues in the present action, in order to obtain the benefit of the FCC's guidance, is appropriate." *Id.* The same reasoning applies here and weighs in favor of granting a stay of this action.

## VI.   <u>CERTIFICATION</u>:

Counsel for the Defendant has conferred with Plaintiffs' counsel regarding this Motion for stay, and has been advised both telephonically and via court filings, that the Plaintiffs oppose this Motion. See Joint scheduling report, at pages 3-4 (section II.D.), filed November 14, 2013

(ECF 20), and Joint Interim Status Report, at pages 3-4 (paragraph G.), filed February 13, 2014 (ECF 32).

## VII.   <u>CONCLUSION</u>

In light of the confusion over what type of system falls within the definition of an ATDS, the fact that guidance from the FCC—the federal agency that possesses the authority to implement and interpret the provisions of the TCPA—is being sought in the three Petitions, and the FCC's indication that a draft order is circulating within the Commission, the Court should stay this action.

Dated: April 3, 2014                                      Respectfully submitted,

                                                          /s/ Dora F. Kaufman
                                                          J. RANDOLPH LIEBLER
                                                          Florida Bar No. 507954
                                                          Email:  jrl@lgplaw.com
                                                          DORA F. KAUFMAN
                                                          Florida Bar No. 771244
                                                          E-mail: dfk@lgplaw.com
                                                          Attorneys for The Gallup Organization, Inc.
                                                          LIEBLER, GONZALEZ & PORTUONDO
                                                          Courthouse Tower - 25th Floor
                                                          44 West Flagler Street
                                                          Miami, FL 33130
                                                          Telephone:  (305) 379-0400
                                                          Facsimile:  (305) 379-9626

                                                          Felicia Yu, Esq.
                                                          fyu@reedsmith.com
                                                          Raagini Shah, Esq.
                                                          rshah@reedsmith.com
                                                          Reed Smith LLP
                                                          355 South Grand Avenue, Suite 2900
                                                          Los Angeles, CA 90071
                                                          Tel.  213-457-8000
                                                          *(Admitted Pro Hac Vice)*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 3, 2014 I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served on all counsel of record listed on the service list below via CM/ECF.

/s/ Dora F. Kaufman
DORA F. KAUFMAN

### SERVICE LIST

Scott D. Owens, Esq.
Florida Bar No. 0597651
644 E. Hallandale Beach Blvd.
Hallandale, FL 33009
Telephone: 954-589-0588
Facsimile: 954-337-0666
Email: scott@scottdowens.com

Steven R. Jaffe (Florida Bar No. 390770)
Email: steve@pathtojustice.com
Seth M. Lehrman (Florida Bar No. 132896)
Email: seth@pathtojustice.com
Mark S. Fistos (Florida Bar No. 909191)
Email: mark@pathtojustice.com
FARMER, JAFFE, WEISSING, EDWARDS
FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Facsimile: (954) 524-2822

Douglas J. Campion, Esq.
LAW OFFICES OF DOUGLAS J.
CAMPION, APC
409 Camino Del Rio South, Suite 303
San Diego, CA 92018
Telephone:  (619) 299-2091
Facsimile:  (619) 858-0034
E-mail:  doug@djcampion.com

E. Elliott Adler, Esq.
ADLER LAW GROUP, APLC
402 W. Broadway, Suite 860
San Diego, CA 92101
Telephone: (619)531-8700
Facsimile:  (619)342-9600

Bret L. Lusskin, Esq.
Florida Bar No. 28069
1001 North Federal Highway, Suite 106
Hallandale Beach, FL 33009
Telephone:  954-454-5841
Facsimile: 954-454-5844
Email: Blusskin@lusskinlaw.com

Todd M. Friedman, Esq.
Nicholas J. Bontrager, Esq.
LAW OFFICES OF TODD M. FRIEDMAN,
P.C.
369 S. Doheny Drive, #415
Beverly Hills, CA 90211
Telephone:  (877) 206-4741
Facsimile:   (866) 633-0228
Email  tfriedman@attorneysforconsumers.com
           nbontrager@attorneysforconsumers.com

Abbas Kazerounian, Esq.
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone:  (800) 400-6808
Facsimile:  (800) 520-5523
Email: ak@kazlg.com

Joshua B. Swigart, Esq.
HYDE & SWIGART
411 Camino Del Rio South, Suite 301
San Diego, CA 92108
Telephone:  (619) 233-7770
Facsimile:   (619) 297-1022
Email: josh@westcoastlitigation.com

US_ACTIVE-115141144