UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

KURT S. SOTO, an individual, on behalf of
himself and all others similarly situated,

    Plaintiff,

v.

THE GALLUP ORGANIZATION, INC.,
a Delaware corporation,

    Defendant.   /

LAURIE C. MARR, on behalf of herself
and all others similarly situated,

    Plaintiff,

v.

GALLUP, INC., a Delaware corporation,

    Defendant.   /

ANN FOX, individually and on behalf of all
others similarly situated,

    Plaintiff,

v.

GALLUP, INC., a Delaware corporation,

    Defendant.   /

Case No. 13-cv-61747-RSR

**CLASS ACTION**

1

### PLAINTIFFS' MOTION FOR STAY OF BRIEFING, OR DENIAL WITHOUT PREJUDICE, OF DEFENDANT'S MOTION TO STAY LITIGATION PURSUANT TO THE PRIMARY JURISDICTION DOCTRINE

Plaintiffs in this consolidated case, in lieu of filing a response brief, respectfully request this Honorable Court adjourn consideration of Defendant's motion to stay until the Plaintiffs have had a sufficient opportunity to conduct discovery into Defendant's telephone dialing technology. Defendant has moved for a stay of this litigation pending the outcome of three petitions before the FCC relating to the definition of "automatic telephone dialing systems." Defendant contends that these FCC petitions bear directly on whether its telephone dialing system qualifies as an "automatic telephone dialing system" under the TCPA. However, Defendant's motion is based entirely upon its own unilateral contentions regarding the technical details of its own dialing equipment. At this early stage of litigation, Plaintiff has not yet had an opportunity to engage in comprehensive discovery regarding Defendant's dialing technology. Without such an opportunity, Plaintiffs are unable to refute Defendant's contentions or provide any meaningful response to Defendant's pending motion. Accordingly, the Plaintiffs respectfully request that the Court adjourn consideration of Defendant's motion until such time as the Plaintiff has conducted discovery into Defendant's dialer systems.

### I.      INTRODUCTION

Defendant is a consulting and polling company that gathers the opinions of individuals worldwide on a wide array of topics, including people's attitudes regarding current events and politics. [ECF No. 40, p.2]. In order to gather these opinions, Defendant utilizes telephone surveys whereby recipients of Defendant's unsolicited telephone calls are asked to respond to a number of questions regarding any number of subjects.

According to the Defendant's 2010 whitepaper entitled *How Are Polls Conducted?*, Gallup states as follows:

> The findings from Gallup's telephone surveys are based on Gallup's standard national telephone samples, consisting of directory-assisted **random-digit telephone samples** using a proportionate, stratified sampling design. This complicated process starts with a computerized list of all telephone exchanges in America, residential and cellular, along with estimates of the number of phones these exchanges have attached to them. The computer, using a procedure called **random-digit-dialing (RDD), actually creates phone numbers from those exchanges and then generates telephone samples from those. In essence, this procedure creates a list of all possible household phone numbers and all possible cell phone numbers in America and then selects a subset of numbers from that list for Gallup interviewers to call.**
>
> It's important to go through this complicated procedure for two reasons. A significant percentage of residential phones are unlisted. And, almost all cell phone numbers are unlisted in the sense that there is no phone book or other comprehensive listing of them. The **random-digit dial** procedure allows telephone exchanges to be the main medium of sampling, **with the digits of particular phone numbers added randomly**.

<u>Exhibit A</u>, *How Are Polls Conducted?* (emphasis added).

Plaintiff contends that this was the method used by Defendant to place the calls at issue. In stark contrast to this publication, however, Defendant now claims that "the dialing equipment used by Gallup does not have the present capacity to store, produce or dial random or sequential numbers. Additionally, the dialing equipment used by Gallup requires human intervention before a call can be placed to a cellular telephone," [ECF No. 40, p.1]. It is upon these contradictory and newly-concocted assertions that Defendant brings its motion to stay the litigation, claiming that a "decision from the FCC as to the questions regarding capacity and human intervention in defining an ATDS will greatly aid the resolution of this case." *Id.*

Plaintiffs are unable to respond to Defendant's motion as it alleges new facts that contradict the Complaint and Defendant's own written responses to Plaintiffs' discovery. Defendant attached to its motion a declaration alleging that its dialing system "did not dial

random or sequential phone numbers," and "lacked the current capacity to store or produce telephone numbers to be called using a random or sequential number generator." (Def. Motion for Stay, Ex. A at ¶ 3-4, ECF No. 40-1).  This declaration directly contradicts Defendant's discovery responses, attached hereto as Composite Exhibit B, in which the Defendant admitted (a) that its whitepaper explaining that it performs random digit dialing (RDD) is accurate, and (b) that it uses the PRO-T-S dialer software to conduct its dialing, which was specifically tailored to RDD dialing.

Defendant's new allegations concern the technical characteristics of Defendant's telephone dialing system, and their veracity goes to the heart of Defendant's motion.  Plaintiffs dispute Defendant's characterization of its telephone dialing system, and must be afforded an opportunity to investigate said system before responding to Defendant's motion.  Accordingly, Plaintiffs, in lieu of a response, bring this motion and request that this Honorable Court stay briefing on Defendant's motion, or deny it without prejudice.

## II. ARGUMENT

### A. *Overview of the Current Petitions Before the FCC*

Defendant's motion is predicated upon three petitions pending before the FCC.  In the first and oldest of the three, *In re: Communication Innovators*, the petitioner, Communication Innovators, "requests that the Commission clarify, consistent with the text of the TCPA and Congressional intent, that predictive dialers that (1) are not used for telemarketing purposes and (2) do not have the current ability to generate and dial random or sequential numbers, are not "automatic telephone dialing systems" ("autodialers") under the TCPA and the Commission's TCPA rules." (Def. Mot. for Stay, Ex. C, ECF No. 40-3).

Next, *In re YouMail* seeks a declaration that YouMail's proprietary software, "which was specifically designed to provide only the types of virtual assistant services offered by YouMail, lacks the current capacity to "store or produce numbers to be called using a random or sequential number generator" and therefore is not an ATDS under the TCPA." (Def. Mot. for Stay, Ex. C, p. 60, ECF No. 40-3).

Finally, Professional Association for Customer Engagement's (PACE) petition seeks a declaratory ruling (or in the alternative, a rule change) which unequivocally assures sellers and teleservices providers "that equipment is not an ATDS merely because it is capable of dialing numbers at the click of a single button." (Def. Mot. for Stay, Ex. C, p. 110, ECF No. 40-3).

B.   *Defendant's Pending Motion*

In support of its motion, Defendant attempts to align the issues in this case with those expressed in the FCC petitions above. To do so, Defendant conjures a new set of facts, characterizing its telephone dialing system as something similar to the predictive dialers discussed in the *In re: Communication Innovators* petition. However, these new allegations conflict the Complaint and the Defendant's own written responses to Plaintiffs' discovery requests,[1] and are strictly disputed by the Plaintiffs. In fact, Defendant's allegations are contradicted *by its own publications*, including its 2010 whitepaper describing its telephone dialing practices.

In Plaintiffs' First Request for Admissions to Defendant, Plaintiffs requested that Defendant admit that its 2010 whitepaper entitled *How Are Polls Conducted?* truthfully and accurately describes how the Defendant conducts surveys and polls. (Def's Resp. to Pl.'s First Req. for Admissions, Exhibit B-1, ¶ 8). Defendant admitted this, answering that "the document

---

[1] Plaintiff only received the aforementioned discovery from Defendant on April 28, 2014.

5

is a truthful and accurate summary or description of how Gallup generally conducts surveys and polls." *Id.* The aforementioned whitepaper explains that Defendant performs its research calls by dialing randomly:

> The computer, using a procedure called random-digit-dialing (RDD), actually creates phone numbers from those exchanges and then generates telephone samples from those. In essence, this procedure creates a list of all possible household phone numbers and all possible cell phone numbers in America and then selects a subset of numbers from that list for Gallup interviewers to call.

Exhibit A, *How Are Polls Conducted?*. This is consistent with the First Amended Complaint, in which Plaintiffs allege "Defendant obtained Plaintiff and other class members' phone numbers by using a computer to randomly generate and dial telephone numbers." (First Am. Compl., ¶ 21, ECF No. 4).

Under these facts of record, the three petitions pending before the FCC are simply not relevant to the claims brought against Defendant, Defendant's new allegations notwithstanding. Plaintiff has alleged, and Defendant has admitted in discovery received on April 28, 2014, that its dialing equipment uses a procedure called random-digit-dialing (RDD) to actually create phone numbers to be dialed. Therefore, under the facts alleged in the Complaint and confirmed by Defendant's discovery responses, Defendant's equipment clearly has the ability to "store or produce numbers to be called using a random or sequential number generator." Defendant's motion is an attempt to backtrack on the functionality of its dialing equipment, and should not be well taken by this Court.

Defendant has now given two different descriptions of its telephone dialing systems. In one description, the Defendant uses Random Digit Dialing (RDD) to randomly assemble telephone numbers and dial them. Exhibit A, *How Are Polls Conducted?* In another, the Defendant "could only dial phone numbers that were specifically downloaded into the dialing

technology."  (Def. Mot. to Stay Litigation, p. 6, ECF No. 40).  These descriptions are incompatible, and the Plaintiff is certainly not required to simply take Defendant at its word. Consequently, Plaintiffs must be afforded an opportunity to inspect and investigate Defendant's equipment to before responding to Defendant's motion.

   C. ***Defendant's Current Discovery Responses***

Defendant's recent responses to Plaintiffs' first round of written discovery suggest that its motion should be denied outright.  In its responses to Plaintiffs' first request for admissions, Defendant admitted that its 2010 whitepaper "is a truthful and accurate summary or description of how Gallup generally conducts surveys and polls." (Def. Responses to Pl. First. Req. for Admissions, attached as Exhibit B-1, ¶ 8).  In this whitepaper, Defendant explains that it performs outbound dialing using Random Digit Dialing (RDD) technology, which randomly assembles telephone numbers and dials them.  Similarly, in its answers to Plaintiffs' first set of interrogatories, Defendant admitted that it uses the PRO-T-S software from Marketing Systems Group to place its outbound calls.  *Id.*

The PRO-T-S software is a research dialer that provides multiple automated dialing modes, including power dialing, progressive dialing, preview dialing, and predictive dialing.[2] This software was specifically designed for researchers employing random digit dialing (RDD), like the Defendant.  *See* Exhibit C, MARKETING SYSTEMS GROUP *Pro-T-S Predictive Algorithm and Efficiency.*

These responses seriously impugn the allegations in Defendant's motion that its dialing system "lacked the current capacity to store or product telephone numbers to be called using a random or sequential number generator and to dial such numbers." (Ex. A to Def. Mot. for Stay,

---

[2] Source:  http://www.m-s-g.com/Web/prots/dialing-overview.aspx (last visited on April 28, 2014).

ECF No. 40-1). To the contrary, by Defendant's own admissions, it used random digit dialing (RDD) technology to randomly generate telephone numbers, and then dialed those numbers using the PRO-T-S software. At the very least, the Plaintiff should be permitted to take additional discovery into Defendant's telephone dialing system.

### D. *Plaintiff Should be Permitted to Take Discovery on Defendant's Dialing System*

Plaintiff submits that in order for the Court to determine whether this action should be stayed, it must first determine which of the Defendant's two versions of the facts to believe: (a) Defendant's discovery responses and its 2010 whitepaper, published to the world and describing how Defendant randomly "creates" phone numbers out of whole cloth, stores them, and sequentially dials them, or (b) Defendant's motion, created strictly for the purpose of this litigation, that Defendant's equipment "does not have the *present capacity* to store, produce or dial random or sequential numbers."

In its motion, Defendant makes technical contentions about its telephone system that, if true, potentially suggest invocation of the primary jurisdiction doctrine and a concomitant stay of this litigation. However, Plaintiff is not required to accept Defendant's unilateral legal conclusions and factual representations. As discussed *supra*, Defendant's 2010 whitepaper directly contradicts the facts alleged in Defendant's motion. Moreover, in its recent responses to Plaintiff's first round of written discovery, Defendant admitted that its 2010 whitepaper "is a truthful and accurate summary or description of how Gallup generally conducts surveys and polls," and explained that it used the PRO-T-S software to place outbound calls. (Def. Responses to Pl. First. Req. for Admissions, attached as Exhibit B-1, ¶ 8), (Def. Answers to Pl. First. Set of Interrog., attached as Exhibit B-2, Interrog. 6).

A nearly identical scenario was recently considered in *Hunt v. 21st Mortgage Corporation*, No. 2:12-CV-2697-WMA, 2013 WL 5230061 (S.D.N.Y. Sept. 17, 2013). In *Hunt*, a TCPA case, the court considered a plaintiff's motion to compel a Rule 34 inspection of the defendant's telephone system. *Id.* at *1. The facts were substantially similar to those at bar, with plaintiff arguing that the Defendant used an automatic telephone dialing system in violation of the TCPA, and the defendant contending that its telephone system did not qualify as an automatic telephone dialing system. *Id.*

The defendant argued, among other things, that the plaintiff was not entitled to take discovery on its telephone dialing system because "the evidence is undisputed that the subject telephone system as installed and used by Defendant never had the use of an autodialer, predictive dialer or any recording capability." *Id.* at *2. The court rejected this argument: "defendant's claim that 'the evidence is undisputed' is one it must save for summary judgment or some other later stage of this litigation. Indeed, the very purpose of the instant motion is to make the evidence disputed." *Id.* at *3.

As in *Hunt*, the Plaintiff here disputes Defendant's characterization of its telephone dialing system. Under the facts alleged in the Complaint, there can be no question that Defendant used an automatic telephone dialing system precisely as described by the text of the TCPA. Although Defendant's version of the facts might permit it to invoke the primary jurisdiction doctrine and halt this litigation, Plaintiff is not required to "take Defendant's word for it." Accordingly, Plaintiff requests that the Court adjourn consideration of Defendant's motion to stay until such time as discovery into Defendant's telephone dialing system has sufficiently advanced.

V. **CONCLUSION**

Plaintiffs respectfully request that the Court adjourn consideration of Defendant's motion to stay until the Plaintiffs have had an opportunity to conduct discovery into Defendant's telephone dialing technology. Plaintiff anticipates that it will need to engage in the following additional discovery: (1) additional written discovery; (2) at least two depositions – a representative of Gallup as well as a representative from its dialer manufacturer; and (3) a possible inspection of Defendant's dialer facility. *See Hunt*, 2013 WL 5230061 at *3-4 (order permitting inspection of premises wherein defendant had claimed that it did not use an ATDS).

Defendant has moved for a stay of this litigation pending the outcome of three petitions before the FCC relating to the definition of "automatic telephone dialing systems," contending that these petitions bear directly on whether its dialer qualifies as an "automatic telephone dialing system" under the TCPA. However, Defendant's motion is based entirely upon unilateral, disputed contentions regarding the technical details of its dialing equipment. Plaintiff has not yet had an opportunity to engage in comprehensive discovery regarding Defendant's dialing technology. Without such an opportunity, Plaintiff is unable to refute Defendant's contentions or respond to its motion. Accordingly, the Plaintiff respectfully requests that the Court adjourn consideration of Defendant's motion until such time as the Plaintiff has conducted discovery into Defendant's dialer systems.

Dated: April 28, 2014

BRET L. LUSSKIN, Esq.
*One of Plaintiffs' Attorneys*
20803 Biscayne Blvd., Ste 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

By: /s/ Bret L. Lusskin, Esq.

>Florida Bar No. 28069
>Bret L. Lusskin, Esq.

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

I hereby certify that I personally spoke with Defendant's counsel on the afternoon of April 28, 2014 in a good faith effort regarding the relief requested herein and have been unable to resolve the matter as Defendant's counsel was unable to reach his client before the close of the business day.

>By: /s/ *Scott D. Owens*
>Scott D. Owens, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 28, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties, if any, who are not authorized to receive electronically Notices of Electronic Filing.

>BRET L. LUSSKIN, Esq.
>*One of Plaintiffs' Attorneys*
>20803 Biscayne Blvd., Ste 302
>Aventura, Florida 33180
>Telephone: (954) 454-5841
>Facsimile: (954) 454-5844
>blusskin@lusskinlaw.com
>
>By: /s/ Bret L. Lusskin, Esq.
>Florida Bar No. 28069
>Bret L. Lusskin, Esq.