UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-61747-CIV-ROSENBAUM

| | |
|---|---|
| KURT S. SOTO, an individual, on behalf of himself and all others similarly situated, | **CLASS ACTION** |
| Plaintiff, | **DEFENDANT GALLUP, INC.'S REPLY IN SUPPORT OF MOTION TO STAY LITIGATION PURSUANT TO THE PRIMARY JURISDICTION DOCTRINE** |
| vs. | |
| THE GALLUP ORGANIZATION, INC., a Delaware corporation, | Honorable Robin S. Rosenbaum |
| Defendant.                             / | |
| LAURIE C. MARR, on behalf of herself and all others similarly situated, | |
| Plaintiff, | |
| vs. | |
| GALLUP, INC., a Delaware corporation, | |
| Defendant.                                   / | |
| ANN FOX, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| vs. | |
| GALLUP, INC., a Delaware corporation, | |
| Defendant.                                   / | |

**GALLUP INC.'S REPLY IN SUPPORT OF MOTION TO STAY LITIGATION
PURSUANT TO THE PRIMARY JURISDICTION DOCTRINE**

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

Case No. 13-61747-CIV-ROSENBAUM

## I.  INTRODUCTION

In response to Defendant Gallup, Inc.'s Motion to Stay the Litigation Pursuant to the Primary Jurisdiction Doctrine (the "Motion to Stay"), Plaintiff has filed a Motion for Stay of Briefing or Denial Without Prejudice of Defendant's Motion to Stay (herein referred to as the "Response").  In his Response, Plaintiff concedes that Gallup has raised issues that "potentially suggest invocation of the primary jurisdiction doctrine and concomitant stay of this litigation" [Response at p. 8]. Nonetheless, Plaintiff asks the Court to either decline to issue a ruling, or dismiss Gallup's Motion to Stay without prejudice, because more discovery is allegedly needed.

Plaintiff's request for further discovery is based on two flawed arguments.  First, Plaintiff contends that the evidence submitted in support of Gallup's Motion to Stay, which describes Gallup's dialing equipment, is somehow contradicted by other statements made in an online publication posted by Gallup, and by Gallup's own discovery responses. However, a simple review of the evidence reveals that nothing in the online publication cited by Plaintiff is at odds with the declaration submitted in support of Gallup's Motion to Stay.  Likewise, Gallup's written discovery responses merely confirm facts regarding Gallup's dialing equipment that were presented with the Motion to Stay.  Thus, the uncontroverted evidence shows that the issues raised in this case fall squarely within the petitions pending before the FCC.

Next, Plaintiff argues that Gallup's evidence in support of its Motion to Stay constitutes "unilateral legal conclusions and factual representations" that Plaintiff is entitled to test. Preliminarily, Gallup did not make unsubstantiated assertions about its dialing system, but rather, presented actual evidence in the form of sworn testimony.  Notably, other courts have concluded that such sworn testimony was sufficient to support a stay in nearly identical circumstances.

Further, the entirety of the Response focuses on Plaintiff's need for more discovery to

determine the current capacity of Gallup's equipment to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. However, Plaintiff ignores the fact that Gallup has separately presented evidence that human intervention is required before Gallup can place a call to a cellular telephone for polling purposes.  As set forth in the Motion to Stay, the PACE Petition that is currently pending before the FCC requests guidance on whether the definition of autodialed calls under the TCPA excludes those calls that require human intervention before a call can be placed, and Gallup has moved to stay this litigation pending the resolution of this issue.  Thus, even if Plaintiff believes he needs further discovery to determine Gallup's current capacity for random or sequential number generation, a stay is still warranted at this time because Gallup's equipment requires human intervention to place a call, and the FCC is currently considering whether such calls are excluded from the TCPA.

    Thus, for all the reasons set forth in Gallup's Motion to Stay and this Reply, the Court should stay this consolidated action pursuant to the doctrine of primary jurisdiction, and should deny Plaintiff's request to stay briefing or dismiss Gallup's Motion to Stay without prejudice.

    **II.**    **LEGAL ARGUMENT**

        A.    The Article Posted on Gallup's Website Does Not Contradict the Statements Made in Support of Gallup's Motion to Stay that Gallup's Dialing System Lacked the Current Capacity for Random or Sequential Number Generation

    The TCPA's definition of an automatic telephone dialing system ("ATDS") is "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1). Whether this capacity must be currently available or theoretically available in such equipment is the issue before the FCC in three separate, pending petitions.  In the sworn declaration submitted

by Glen Kallhoff, Gallup's Senior Systems Administrator (the "Kallhoff Declaration"), Gallup confirmed that the equipment it used to place calls did <u>not</u> have the current capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. [Kalhoff Declaration ¶ 4]. Kalhoff explained that Gallup's Dialing System could only dial phone numbers that were specifically downloaded into the calling technology. [Kalhoff Declaration ¶ 5].

In the Response, Plaintiff suggests that the article published on Gallup's website, entitled, "How Are Polls Conducted?" (the "Website Article"), contradicts the facts stated in the Kallhoff Declaration. Specifically, Plaintiff points to language in the Website Article which states that in order for Gallup to conduct polls, a computer, using a procedure called random-digit-dialing ("RDD"), creates phone numbers from a list of telephone exchanges in order to obtain a representative calling sample. *See* Response at pp. 3, 6. Plaintiff argues that these statements are consistent with his allegations in the First Amended Complaint, in which Plaintiff alleges, "Defendant obtained Plaintiff and other class members' phone numbers by using a computer to randomly generate and dial telephone numbers." Response at p. 6. Plaintiff further argues that the "two different descriptions of its telephone dialing systems" contained in the Kallhoff Declaration and the Website Article require that Plaintiff be afforded an opportunity to conduct further discovery before responding to the Motion to Stay.

Nowhere on the Website Article, however, is there a single statement that ***Gallup*** creates or generates telephone numbers. *See* Response at Exhibit A. In fact, Gallup's written discovery responses in this action explain that Gallup does not generate any telephone numbers. Specifically, in response to two separate interrogatories from Plaintiff asking how Gallup obtains the numbers to which it places calls, Gallup responded under oath stating, "Gallup purchased the telephone numbers from a third party sample vendor. Using these types of vendors for public opinion polling allows Gallup to get a more representative sample for its polling and therefore produce more accurate polling results. Gallup does not generate any telephone numbers." [*See*

Exhibit 3 to Plaintiff's Motion to Stay Briefing (Gallup's responses to Interrogatory numbers 3, 14)]. These discovery responses are thus consistent with Kalhoff's testimony that Gallup's Dialing System could only dial phone numbers that were specifically downloaded into Gallup's calling technology, and are also consistent with Kalhoff's testimony that Gallup did not use equipment that had the current capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. Notably, the Website Article, which never states that Gallup generates any phone numbers, does not contradict these facts.

Additionally, the Website Article's mention of the use of RDD, which Plaintiff highlights in his Response, does not suggest that Gallup's equipment had the current capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. Under the TCPA, "random number generation" means the generation of "random sequences of 10 digits, and 'sequential number generation' means (for example) (111) 111-1111, (111) 111-1112, and so on." *Gragg v. Orange Cab Company, Inc.*, No. C12-0576RSL, 2014 WL 494862, *3 (W.D. Wash. Feb 7, 2014) (citing *Griffith v. Consumer Portfolio Serv. Inc.,* 838 F.Supp.2d 723, 725 (N.D. Ill. 2011)). The Website Article does not indicate that any computer or software used by Gallup generates or has the capacity to generate random sequences of 10-digit phone numbers, nor does it indicate that any computer of software used by Gallup had the capacity for sequential number generation; instead, the Website Article describes a complicated process whereby a computer creates lists of telephone numbers to be called, which numbers are derived from existing telephone exchanges. This system, as explained in the Website Article, maximizes the accuracy of Gallup's polling by creating more representative samples. Thus, Gallup's reference to RDD in its Website Article in no way suggests that Gallup's equipment has the capacity to generate random or sequential phone numbers and to dial such numbers. *See Gragg*, 2014 WL 494862, *3. Thus, Plaintiff's

argument -- that he must conduct further discovery given the alleged contradiction between the descriptions of Gallup's dialing equipment -- is completely without merit.

      B.      Gallup's Interrogatory Response is Consistent with the Kallhoff Declaration's Assertion that Gallup's Dialing System Lacked the Current Capacity For Random Or Sequential Number Generation

Plaintiff also argues that because Gallup stated in its response to Plaintiff's Interrogatories that it used the "Pro-T-S Software" to assist in the placement of calls for polling purposes, this contradicted Gallup's assertion in its Motion to Stay that it did not use equipment that had the current capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.  In an attempt to support this argument, Plaintiff notes that the Pro-T-S software "provides multiple automated dialing modes, including power dialing, progressive dialing, preview dialing, and predictive dialing."  Response, p. 7. Plaintiff cites the website listed in footnote 2 of his brief (the "Pro-T-S Overview Website") in support of this proposition.  However, Plaintiff has omitted that the Pro-T-S Overview Website also states that this software has a mode for manual dialing, and also fails to mention that the website specifically states, "The availability of specific modes **is determined by the CATI system in use.**"  [Source: http://www.m-s-g.com/Web/prots/dialing-overview.aspx].  Thus, at most, the website simply states that the ability to use Pro-T-S Software in various modes is dependent on other factors.  Clearly, this does not contradict the facts set forth in the Kallhoff Declaration.  More importantly, however, there is no evidence or authority to suggest that the capacity to dial in any of the modes listed by Plaintiff means that the equipment has the current capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.

Plaintiff also appears to make a very tenuous argument that because the Pro-T-S software appears to have been developed for researchers employing RDD, this means that Gallup uses equipment that has the current capacity to store or produce telephone numbers to be called using

a random or sequential number generator and to dial such numbers. Response at p. 7. Plaintiff cites to a document entitled "Pro-T-S Predictive Algorithm and Efficiency," attached as Exhibit C to his Response in an attempt to support this argument. As a preliminary matter, Plaintiff does not explain where he obtained this document nor does he cite the source of this document. Further, while the document does suggest that Pro-T-S was developed to assist survey researchers, it does not state that the software was specifically designed to assist these researchers with RDD. Further, as stated above, the use of RDD does not mean that a device engages in "random or sequential" number generation as those terms are defined under the TCPA. In fact, the document attached as Exhibit C states only that the use of RDD means that telephone numbers are *selected* at random, not that ten-digit numbers are randomly generated. *See* Response at Exhibit C, p. 1. Finally, nothing in this document even hints that the Pro-T-S software has the current capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. Thus, contrary to Plaintiff's argument, Gallup's identification of the Pro-T-S software in its Interrogatory responses in no way contradicts the sworn statements made in the Kallhoff Declaration.

> C. A Stay is Warranted in this Action for the Separate Reason that Human Intervention is Required Before Gallup Places Calls to Cellular Telephones, and this Issue is Also Pending Before the FCC

Throughout the Response, Plaintiff argues that he must conduct further discovery in order to confirm whether Gallup's system lacks the current capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. However, as set forth in Gallup's Motion to Stay, the petitions pending before the FCC address two distinct questions: the first being the issue on which Plaintiff focuses--whether current or theoretical capacity should be considered when determining whether a system is an ATDS under the TCPA--and the second being whether the definition of a call placed with the use of an ATDS includes those calls that require human intervention before the call can be placed.

Case No. 13-61747-CIV-ROSENBAUM

Gallup has set forth evidence that its employees must manually intervene before a call can be placed to a cellular telephone for polling purposes. [*See* Kalhoff Decl. ¶ 6]. Thus, even accepting Plaintiff's unsupported argument that Gallup has failed to show that that its equipment does not have the current capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers, Gallup has shown that its equipment requires human intervention to place a call to a cellular telephone, and Plaintiff never disputes this showing. Because Gallup's equipment requires human intervention before a call can be placed to a cellular telephone, the issues raised in Plaintiff's Complaint overlaps squarely with the issue before the FCC in the PACE Petition. *See* Motion to Stay at p. 6. The FCC's guidance on this issue, over which it has expertise, would greatly assist in the adjudication of Plaintiff's claims against Gallup. Thus, notwithstanding Plaintiff's argument regarding the further need for discovery into the current capacity of Gallup's dialing equipment for random or sequential number generation, a stay would still be warranted under the primary jurisdiction doctrine at this time since Gallup requires human intervention to place calls.

        D.        Plaintiff Does Not Need to Conduct Further Discovery in Order to Respond to Gallup's Motion to Stay

Plaintiff appears to argue that even without the the alleged "contradictions" between the Website Article, Gallup's discovery responses, and the Motion to Stay, Plaintiff is entitled to further discovery in any event because Plaintiff "is not required to accept Defendant's unilateral legal conclusions and factual representations." Response at p. 8. However, Gallup did not simply make "unilateral legal conclusions and factual representations" in its Motion to Stay; instead, it presented admissible evidence in the form of sworn testimony. Moreover, Gallup responded to interrogatories, document requests, and requests for admissions propounded by

Case No. 13-61747-CIV-ROSENBAUM

Plaintiff, which, as set forth above, has only confirmed the evidence submitted by Gallup with its Motion to Stay.

The case relied on by Plaintiff, *Hunt v. 21st Mortg. Corp.*, No. 2:12-CV-2697, 2013 WL 5230061 (S.D.N.Y. Sept. 17, 2013) is inapposite. The motion before that court was not a motion to stay pursuant to the primary jurisdiction doctrine; rather, the *Hunt* court was considering a motion to compel responses to discovery brought by the plaintiff. The plaintiff wanted to inspect the defendant's dialing equipment to determine if such equipment met the definition of an ATDS as defined by the TCPA. The defendant argued that the plaintiff was not entitled to such inspection because its equipment did not fall within the definition of an ATDS. *Id.* at *2-3. The court granted the motion to compel. *Id.* at *3. In so ruling, the court explained that for the purposes of discovery, plaintiff's requests were relevant to support his claims against the defendant. *Id.* at *3. Since the general scope of discovery under the federal rules is broad, plaintiff was entitled to some of the discovery he sought. *Id.* at *1, *3.

In this case, the Court is not considering a motion to compel discovery responses in which the relevant inquiry is whether Plaintiff is seeking discovery that is relevant to his claims. Instead, this Court is tasked with determining whether "enforcement of [Plaintiff's] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *U.S. v. Western Pac. R. Co.*, 352 U.S. 59, 64 (1956). The questions of human intervention and "present" versus "theoretical" capacity of dialing equipment under the TCPA have been posed before the FCC, and Gallup has shown that resolution of these issues by the FCC will greatly affect the enforcement of Plaintiff's TCPA claim against Gallup.

This conclusion is bolstered by the courts' decisions in in the cases of *Mendoza v. United Health Group, Inc. et al.*, Case No. 4:13-CV-01553-PJH, 2014 WL 722031 (N.D. Cal., Jan 6, 2014), and *Hurrle v. Real Time Resolutions, Inc.*, Case No. C13-5765, 2014 WL 670639, *1 (W.D. Wash. Feb. 20, 2014).  In both of these cases, the courts granted stays in putative TCPA class actions based on the pending petitions before the FCC governing the scope of the definition of an ATDS.  In requesting that the court stay the actions, the defendant in *Mendoza* relied on general testimony regarding the capacity of its equipment, and the defendant in *Hurrle* offered very little evidence regarding the current capacity of its equipment.  *See Mendoza*, N.D. Cal. Case No. 4:13-CV001553 at Docket Numbers 50, 51, 57, 58, 61;  *Hurrle*, W.D. Wash. Case No. C13-5765, at Docket Numbers 14, 15, 17, 18, 19, 24.   The *Mendoza* and *Hurrle* courts, in granting stays, simply examined whether the legal issues raised in the plaintiffs' complaints overlapped with the issues pending before the FCC.  *See Mendoza,* 2014 WL 722031, *3; *Hurrle,* 2014 WL 670639, *1.   The decisions in *Hurrle* and *Mendoza* are thus inconsistent with Plaintiff's argument that a substantial amount of discovery and investigation into Gallup's dialing equipment is needed before this Court can rule on the Motion to Stay.

Another reason that the Court should not decline to rule on the Motion to Stay until Plaintiff has conducted further discovery is that such a decision would not promote judicial efficiency.  As one court has explained, "The primary jurisdiction doctrine is rooted in part in judicial efficiency."  *U.S. v. Philip Morris USA Inc.*, 686 F.3d 832, 838 (C.A.D.C. 2012) (explaining that it was "no coincidence" that the decision of many courts to defer a decision to agency "came near the beginning of the case"); *see also TCG New York, Inc. v. City of White Plains*, 305 F.3d 67, 74 (2nd Cir. 2002) (explaining that the primary jurisdiction doctrine serves the interest of judicial economy).  In this case, Gallup has established that the issues in the First

Case No. 13-61747-CIV-ROSENBAUM

Amended Complaint directly overlap with questions before the FCC that are within the FCC's expertise. If the court delayed resolution of the Motion to Stay pending another round of written discovery, "at least two depositions," and an inspection of Gallup's dialer facility, the goal of judicial efficiency would be lost, as the completion of such anticipated discovery could take months. For this additional reason, Plaintiff's request that a decision on the Motion to Stay be delayed until Plaintiff conducts further discovery should be denied.

### III.     CONCLUSION

Plaintiff has not demonstrated any reason why he must conduct further discovery before this Court can issue a ruling on Gallup's Motion to Stay. Further, as set forth in Gallup's Motion to Stay and this Reply, Gallup has established that this action would be appropriately stayed pending the FCC's clarification regarding the type of system that falls within the TCPA's definition of an ATDS. Accordingly, Gallup respectfully requests that its Motion to Stay be granted.

Respectfully submitted,
/s/ Dora F. Kaufman
J. RANDOLPH LIEBLER
Florida Bar No. 507954
Email:  jrl@lgplaw.com
DORA F. KAUFMAN
Florida Bar No. 771244
E-mail: dfk@lgplaw.com
Attorneys for The Gallup Organization, Inc.
**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Telephone:  (305) 379-0400
Facsimile:  (305) 379-9626

Felicia Yu, Esq.
fyu@reedsmith.com
Raagini Shah, Esq.
rshah@reedsmith.com
Reed Smith LLP

Case No. 13-61747-CIV-ROSENBAUM

355 South Grand Avenue, Suite 2900<br>
Los Angeles, CA 90071<br>
Tel.  213-457-8000<br>
<em>(Admitted Pro Hac Vice)</em>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 8, 2014 I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served on all counsel of record listed on the service list below via CM/ECF.

/s/ Dora F. Kaufman
DORA F. KAUFMAN

**SERVICE LIST**

Scott D. Owens, Esq.
Florida Bar No. 0597651
644 E. Hallandale Beach Blvd.
Hallandale, FL 33009
Telephone: 954-589-0588
Facsimile: 954-337-0666
Email:  scott@scottdowens.com

Steven R. Jaffe (Florida Bar No. 390770)
Email: steve@pathtojustice.com
Seth M. Lehrman (Florida Bar No. 132896)
Email: seth@pathtojustice.com
Mark S. Fistos (Florida Bar No. 909191)
Email: mark@pathtojustice.com
FARMER, JAFFE, WEISSING, EDWARDS
FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Facsimile: (954) 524-2822

Douglas J. Campion, Esq.
LAW OFFICES OF DOUGLAS J. CAMPION, APC
409 Camino Del Rio South, Suite 303
San Diego, CA 92018
Telephone:  (619) 299-2091
Facsimile:  (619) 858-0034
E-mail:  doug@djcampion.com

E. Elliott Adler, Esq.
ADLER LAW GROUP, APLC
402 W. Broadway, Suite 860
San Diego, CA 92101
Telephone: (619)531-8700
Facsimile:  (619)342-9600

Bret L. Lusskin, Esq.
Florida Bar No. 28069
1001 North Federal Highway, Suite 106
Hallandale Beach, FL 33009
Telephone:  954-454-5841
Facsimile: 954-454-5844
Email:  Blusskin@lusskinlaw.com

Todd M. Friedman, Esq.
Nicholas J. Bontrager, Esq.
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
369 S. Doheny Drive, #415
Beverly Hills, CA 90211
Telephone:  (877) 206-4741
Facsimile:   (866) 633-0228
Email   tfriedman@attorneysforconsumers.com
          nbontrager@attorneysforconsumers.com

Abbas Kazerounian, Esq.
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone:  (800) 400-6808
Facsimile:   (800) 520-5523
Email: ak@kazlg.com

Joshua B. Swigart, Esq.
HYDE & SWIGART
411 Camino Del Rio South, Suite 301
San Diego, CA 92108
Telephone:  (619) 233-7770
Facsimile:   (619) 297-1022
Email: josh@westcoastlitigation.com